USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTEGRITY COMMUNICATIONS
CORPORATION, et al.,

                         Plaintiffs,

         - against -

RALPH H. BAKER JR.,

                         Defendant.

REPORT AND
RECOMMENDATION

10 Civ. 3238 (DAB) (RLE)

To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:

## I. INTRODUCTION

Plaintiffs Integrity Communications and Michael B. Schnitzer ("Schnitzer"), its sole shareholder, (jointly referred to as "Intergrity") bring this action against Ralph H. Baker Jr. ("Baker") for copyright infringement and tortious interference with business relations. A default judgment was entered against Baker on April 16, 2013. (*See* Docket No. 34.) Before the Court is Integrity's inquest for damages, injunctive relief, and attorney's fees and costs.

For the reasons that follow, I recommend that Integrity's request for damages be **GRANTED** in nominal damages of $1, its request for injunctive relief be **GRANTED** in full, and request for attorney's fees and costs be **GRANTED**, but reduced to total $20,000.

## II. BACKGROUND

The Parties own competing websites and moderate competing Yahoo! Groups that are devoted to the Golddiggers and the Dingaling Sisters – two all-female singing groups that were featured on *The Dean Martin Show* in the 1960s and 70s. (Compl. ¶ 1.) Integrity alleges that Baker infringed its copyrights, engaged in unfair trade practices, reproduced and wrongly claimed Integrity's original work and content, interfered with its business relations, and

maliciously posted false and misleading information in online forums. (Compl. ¶¶ 38–120.)

On April 27, 2011, Integrity filed its first motion for default judgment. (Docket No. 14.) On August 5, 2011, the Court issued a Report and Recommendation, recommending that Integrity's motion be denied. (Docket No. 18.) The Report and Recommendation was adopted in full on September 2, 2011. (Docket No. 20.) On December 16, 2011, Integrity filed a second motion for default judgment. (Docket No. 25.) On March 26, 2012, the Court issued a Report and Recommendation ("March 2012 Report"), recommending that the motion be granted. (Docket No. 31.) The March 2012 Report was adopted in its entirety on April 16, 2012. (Docket No. 34.) On April 20, 2012, the Court ordered the Parties to appear personally on May 17, 2012. (Docket No. 35.) Baker failed to appear or provide the Court with notification explaining his absence. On May 22, 2012, the Court issued an Order indicating when the Parties should "submit documentation supporting their respective positions with regard to damages." (Docket No. 36.) Plaintiffs filed a Declaration in Support of Damages, ("Initial Declaration," Docket No. 37), seeking $100,000 for damages suffered over the last five years, $28,268 in attorney's fees and expenses, and a detailed permanent injunction. (Decl. in Supp. of Pls.' Damages ("Pls.' Decl.") ¶ 2.) In lieu of filing any opposition, Baker submitted a letter to the Court consisting of a two-page reprint of a Yahoo! Group message with the subject line "Does a site moderator have rights of final decision?" and a hand-written note that stated, "Dear Mr. [sic] Ellis, [t]here will be no financial settlement to Plaintiff Michael B. Schnitzer. So decreed! Sincerely, Ralph H. Baker, Jr."[1] (Baker's June 26, 2012 Letter to the Court.)

---

[1] Baker also sent a letter to counsel for Integrity that was identical except for the hand-written note on the second page that read, "Dear Mr. Ben-Zvi, [t]here will be no financial settlement to Mike Schnitzer. His demands are out of bounds, and the clash of personalities—his vs. mine—must be resolved UP FRONT. FIRST BEFORE ALL ELSE! Sincerely, Ralph Baker." (Baker June 26, 2012 Letter to Pls.' Counsel.)

In response to Baker's letter, Integrity argued that Baker's "failure to deny" any of the contents of its initial declaration constitutes "an admission" by Baker that those contents are "true." (Reply Decl. In Supp. Of Pls.' Damages ("Pls.' Reply Decl.") ¶ 4.) Integrity also filed a sworn statement by Michelle DellaFave, Schnitzer's fiancée and a former member of the Golddiggers and the Dingaling Sisters, wherein DellaFave describes Baker's harm to Integrity. (*See* Decl. In Supp. Of Pls.' Damages ("DellaFave Decl.").) On April 16, 2013, a hearing was held to assist in the calculation of damages. Baker did not appear.

### III.   DISCUSSION

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In other words, entry of a default judgment settles the question of liability for all well-pleaded claims, but the plaintiff still bears "the burden of proving in dollars and cents each item of damage." *Greyhound*, 973 F.2d at 160. The plaintiff meets this burden by offering evidence that is sufficient to "establish damages with reasonable certainty." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Anglo-Iberia Underwriting v. Lodderhose*, 282 F. Supp. 2d 126, 132 (S.D.N.Y. 2003).

In addition to the plaintiffs' burden of proving damages with reasonable certainty, Federal Rules of Civil Procedure 54(c) and 55(b) also have bearing on post-default inquests. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> [The theory of this provision] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair

3

> to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007) (*quoting* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2663 (1998)). Rule 54(c) requires the pleadings to have given the defendant "meaningful notice" of potential liability in the event of a default judgment. *Silge*, 510 F.3d at 160. "The timing and method of such notice (i.e., that it come before the decision to default and be evident from the face of the complaint) are both critical to the analysis." *Id.* at 161. Rule 55(b)(2) provides that, after an entry of default judgment, "[t]he court may conduct hearings" to "determine the amount of damages." A court is not required to hold a hearing, provided that the court ensures "that there is a basis for the damages specified in a default judgment." *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A. **Monetary Damages**

Before analyzing whether a plaintiff has proven damages with reasonable certainty, the Court would typically scrutinize the pleadings to ensure (1) that damages requested at the inquest stage do no exceed the demand for damages in the pleadings and (2) that all claims are well-pleaded. Here, the $19,500,000 in damages demanded in the Complaint, (*see* Compl. at 18-19), exceeds Integrity's present damages claim of $100,000, satisfying the first requirement. (*see* Pls.' Decl. ¶ 2(a); Pls.' Reply Decl.¶ 10(a)).

The necessity of ensuring that all of Integrity's claims are well-pleaded is obviated by its failure to proffer any evidence that it suffered actual pecuniary loss as a direct result of Baker's conduct. With the exception of its $100,000 claim, (*see* Pls.' Decl. ¶ 2(a); Pls.' Reply Decl.¶

4

10(a)), Integrity's three inquest submissions, including the sixteen exhibits appended to the Initial Declaration, fail to discuss any item of damage in terms of monetary value. Instead, Integrity uses its declarations to detail (in general, non-monetary terms) the harm that it has suffered and to impress upon the Court the moral turpitude of Baker's acts. For example, Plaintiffs make the following claim for damages in their Initial Declaration, under the heading "Plaintiff's Own Valuable Time Was Consumed In Combating Defendant's Actions":

> A huge amount of Plaintiff's own valuable time has had to be expended over the last five years trying to combat and offset the negative effects of Defendant's theft of Plaintiffs' intellectual property, palming off of Plaintiff's work as his own, defamation of Plaintiff's character, invasion of Plaintiff's privacy, as well as a host of other flagrant violations of Plaintiff's rights, as listed in Plaintiff's complaint. All of that time was taken away from more constructive uses.

(Pls.' Decl ¶ 31.) Setting aside the absence of any claims for Plaintiffs' loss of time on the face of the Complaint, which under Fed. R. Civ. P. 54(c) seems to be fatal to any such claims, "a huge amount" is insufficient to make a quantitative determination of damages. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (suggesting that plaintiff-provided "estimates" that "were at best undocumented, and at worst, speculative" failed to establish damages with reasonable certainty). Further, even if Integrity had not failed to provide a quantitative estimate of, and supporting evidence for, the amount of time that Integrity lost as a direct result of Baker's actions, Integrity also fails to provide any legal justification for the valuations of time lost or any evidence that might shed light on the value of its time, such as what the value of "more constructive uses" might reasonably have been. Such arguments are immaterial to reaching an appropriate determination of damages.

Similarly, during the hearing, Schnitzer was unable to specify any monetary damages. He explained that he had been in pre-contractual discussions with Deanna Martin, the daughter

of Dean Martin, and her manager (who is also her husband) about "possibly doing some type of television variety special." (Tr. 13:6-10.) Schnitzer stated that the variety special would be "on broadcast or cable television or made-for home video." (Tr. 13:9-10.) When asked by the Court whether he would receive a producer credit or something similar, Schnitzer stated that he did not know specifically, but that he would certainly be involved either as "a consultant or as somebody who would offer guidance or direction about it." (Tr. 13: 12-18.)

Schnitzer also testified that he had been in similar, pre-contractual discussions with Jeffrey Peisch, the president of Time Life. (Tr. 14: 24-25.) Schnitzer stated that Time Life distributed a series of DVDs containing highlights from the Dean Martin show, and that he had been given exclusives on new releases. (Tr. 10: 10-13.) He also explained that he would bring a certain degree of expertise to the creation of any project with Time Life because he had been consulted in the past on the accuracy of Time Life's previous Dean Martin Show releases. (Tr. 15: 11-20.)

In both instances – with Deana Martin and Jeffery Peisch – Schintzer stated that Baker interfered with additional discussions. He stated that "[a]fter Baker started doing this and started trying to interfere with our business, [Deana Martin], as well as others that we were trying to work with for the purpose of mounting business ventures, began to shy away from us . . . because . . . they just don't want any controversy." (Tr. 8:12-18.) With respect to Time Life, Schnitzer stated "I had hoped to develop a working relationship with them for purposes of doing ancillary materials from some of these DVDs, but, again, not wishing to step into this controversy, you know, [Time Life] shied away from pursuing that with me." (Tr. 10:13-17.)

Integrity argues that it is entitled to $100,000 in damages because of Baker's interference with its potential contractual agreements with Deana Martin and Time Life. Integrity, however,

does not provide the Court with any explanation as to how it came to its figure. In *Anglo-Iberia Underwriting Management Co. v. Lodderhose*, 282 F. Supp. 2d 126, 130 (S.D.N.Y. 2003), the court held that certain damages set forth by the plaintiffs were speculative and unrecoverable. Specifically, the court held that the plaintiff's claim that the defendants forced the plaintiff to close its business, entitling it to $10,000 in damages was unsubstantiated, and therefore, unrecoverable. 282 F. Supp. 2d at 130. Similarly, Integrity in its multiple briefs and during the hearing has not pointed to anything to substantiate its claim of $100,000 in damages. *See id.*; *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (holding the plaintiff's "estimates" that "were at best undocumented, and at worst, speculative," failed to establish damages with reasonable certainty).

In summary, Integrity requests $100,000 in damages, but provides no explanation of how the figure was calculated, or even prove that it has suffered those actual damages. Accordingly, the Court recommends that Integrity be awarded only nominal damages in the amount of $1. *See Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 259 (S.D.N.Y. 2011); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 320 (S.D.N.Y. 2008).

## C. Permanent Injunction

A court may grant injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it meets the prerequisites for the issuance of an injunction." *TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215 (GBD) (FM), 2012 WL 760168 (S.D.N.Y. Feb. 23, 2012), *report and recommendation adopted*, 2012 WL 1948816 (S.D.N.Y. May 30, 2012). A plaintiff seeking a permanent injunction must show "(1) actual success on the merits and (2) irreparable harm."

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003). In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations." *Warner Bros. Entm't Inc. v. Carsagno*, No. 06 Civ. 2676 (NG) (RLM), 2007 WL 1655666, at *5 (E.D.N.Y. June 4, 2007).

Here, 42 U.S.C. § 502(a) provides the statutory basis for Schnitzer's injunctive relief. Baker's default judgment against him demonstrates Schnitzer's success on the merits. *See Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 07 Civ. 1784 (RMB) (GWG), 2007 WL 3287368, at *6 (S.D.N.Y. Nov. 7, 2007). As previously discussed, Baker interfered with pre-contractual discussions between Schnitzer and Deana Martin and Time Life, and disrupted Schnitzer's Yahoo! Groups discussions. Moreover, Baker associated himself with Schnitzer and created a similar website dedicated to the Golddiggers and the Dingaling Sisters. Schnitzer claims that this association chilled future entrepreneurial exploits that he had planned. Schnitzer also claims that he was forced to spend time on repairing damage caused by Baker instead of continuing discussions with his associates on how to monetize his ideas relating to the Golddiggers and the Dingaling Sisters. These acts against Integrity constitute irreparable harm because they damaged personal and potential business relationships, which are often not cured by a monetary award. *See Rex Medical L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010).

In the Complaint, Integrity demanded preliminary and permanent injunctions as relief for Baker's ongoing infringement of its copyrights. (*See* Compl. ¶¶ 18, 49.) Integrity proposed the following preliminary injunction for Baker's alleged copyright infringement:

> Pursuant to 17 U.S.C. § 502, Plaintiff therefore requests the Court to grant a preliminary injunction enjoining Defendant, his agents, servants, employees, and those acting in concert with him:

> (i) From possessing, receiving, manufacturing, licensing, assigning, offering for sale, creating derivative works from, promoting, advertising, manufacturing, distributing, performing or otherwise exploiting said original content and/or works of authorship;
>
> (ii) From infringing Plaintiff's rights in and to said original content and/or works of authorship.

(Compl. ¶ 49.) In summarizing their demands for relief, Integrity demanded a permanent injunction on the same claim. (Compl. at 18.) Integrity now proposes that the Court direct to Baker the following four-part permanent injunction:

> (i) permanently remove from Defendant's website and Yahoo Group all references, both direct and implied, to Plaintiff Michael B. Schnitzer and Plaintiff's business associates Wes Guidry, Michelle DellaFave, Lindsay Bloom, Raynee Ashman Steele (née Micki McGlone), Janice Glazier (née Taffy Jones), Renee Anderson (née Tara Leigh), Janice Whitby, Jayne Kennedy, Helen Funai, Sheryl Ullman, Kylie Hughes and Kim Fuller; as well as *The Golddiggers Super Site* and the *Dean, Golds and Dings* website, both of which are owned and operated by Plaintiff Schnitzer;
>
> (ii) permanently delete from Defendant's website and Yahoo Group all images, both vintage and contemporary, of the forenamed individuals, and all images taken from *The Golddiggers Super Site* and *Dean, Golds and Dings* website;
>
> (iii) permanently refrain from making any further comments about, or references—direct or indirect—to any of the individuals named above, *The Golddiggers Super Site*, the *Dean Golds and Dings* website, or posting any images of any of them, or any images taken from *The Golddiggers Super Site* or the *Dean, Golds and Dings* website, still or moving, on Defendant's website, in his Yahoo Group, or anywhere else on the Internet;
>
> (iv) permanently cease and desist from mentioning, either directly or indirectly, any of the individuals named above, or *The Golddiggers Super Site* or *Dean, Golds and Dings* website, in any type of verbal conversation or written correspondence, be it via letter or email.

(Pls.' Decl. ¶ 2(c).)

Rule 54(c) mandates that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The requested relief now before the Court does not differ in kind from the relief requested in the Complaint. Baker was on meaningful notice of the

9

potential liability. *See Silge*, 510 F.3d at 160. Throughout the Complaint, Integrity referenced Schnitzer and his business associates, the Yahoo! Groups at issue, its websites, and the type of damage it believed Baker had caused to its business pursuits. The Complaint also described the potential for continued violation absent a court order. Therefore, I recommend that Integrity be **GRANTED** a permanent injunction against Baker as proposed in paragraph 2(c) in Integrity's declaration. (*See* Pl.'s Decl. ¶ 2(c).)

### B.   Costs and Attorney's Fees

Section 505 of the Copyright Act explicitly provides that, pursuant to a violation of the Copyright Act, "the court in its discretion may allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also Barrera v. Brooklyn Music, Inc.*, 346 F. Supp. 2d 400, 404 (S.D.N.Y. 2004). In deciding whether to award attorney's fees, the Supreme Court has mandated a two-step inquiry. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992); *see also Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). A party must (1) "be a 'prevailing party' in order to recover," and (2) "the requested fee must also be reasonable." *Pino*, 101 F.3d at 237.

A plaintiff is deemed to be a "prevailing party" in an action "when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12. "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113. However, "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all." *Id.* at 115; *See also Pino*,

101 F. 3d at 238.

Here, Integrity prevailed against Baker by a default judgment. The prevailing party inquiry, however, does not end there. In light of *Farrar* and *Pino*, the Court must address the nature of Integrity's relief. In *Farrar*, the Court held that declaratory judgment alone is insufficient for an award of attorney's fees. 506 U.S. at 110. The Court further explained that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id.* Therefore, the Court held that a prevailing party under consideration for attorney's fees "must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Id.* at 111. In this case, the Court has recommended that Integrity be granted nominal damages because it has only provided speculative evidence in relation to its requested monetary award. The Court has also recommended that Integrity be granted a permanent injunction against Baker, which would prevent him from further infringing activity. A permanent injunction against Baker constitutes a "material alteration of the legal relationship between the parties, " *Farrar*, 506 U.S. at 110, because it is an enforceable judgment prohibiting Baker from taking certain actions that he had been taking prior to the initiation of this lawsuit. This is a direct benefit to Integrity. *Id.* at 111-12. Therefore, Integrity is entitled to reasonable fees and costs.

Courts use the "lodstar method" to determine the reasonableness of a requested fee. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). The lodstar figure is based on the number of reasonable hours expended multiplied by a reasonable hourly rate. *Id.* The figure "should be in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* The "prevailing community" is normally the district in which the case is filed. *Polk v. New York State Dep't of Correctional*

*Services*, 722 F.2d 23, 25 (2d Cir. 1987). "If an attorney expends an excessive amount of time on a given task, the court should reduce the claimed hours for compensation purposes." *Raniola v. Bratton*, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *3 (S.D.N.Y. Apr. 21, 2003). A court may reduce the request fee amount for claims that failed, so long as the reduction is separate from successful claims. *See id.*; *accord Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992).

The Complaint contains a demand for "the costs, fees, disbursements and attorneys fees incurred herein." (Compl. at 19.) In its Initial Declaration, Integrity asked the Court to award $28,268 for attorney's fees and expenses, which included "attorney's fees and expenses in the amount of $18,268 through March 1, 2012, and an additional $10,000 in attorney's fees" for services rendered after March 1. (Pls.' Decl. ¶ 2(b).) Exhibit A of the Initial Declaration is an invoice for services that attorney Leslie H. Ben-Zvi performed in litigating this lawsuit between February 9, 2010, and March 1, 2012. (*See* Pls.' Decl. Ex. A.) The total invoice is $18,483 ($18,268 in fees and $215 in expenses), which includes 45.67 hours billed at an hourly rate of $400. (Pls.' Decl. Ex. A at 3.) Unlike its $18,268 request, Integrity initially provided no documentation to support their request for $10,000 in attorney's fees incurred after March 1, 2012. At the hearing, counsel explained that he would provide additional documentation to reflect work since the original submission date. (Tr. 31:6-7.) Counsel accrued 24.87 hours between March 12, 2012, and April 16, 2013, for a total of $9,948 in fees. Counsel spent $20 on costs during this time. The total fee request of $28,216 is thus comprised of 70.54 hours of work at $400 per hour, with costs of $235. The total request is $28,451.

Integrity has not – as it is required to do – "provided information detailing the standard hourly rates charged by attorneys with like experience and skill." *Ritchie v. Gano*, 756 F. Supp.

2d 581, 583 (S.D.N.Y. 2010). The Court nevertheless finds that counsel's fee – $400 per hour for an attorney with over thirty years experience – reasonable in light of the rates charged in the Southern District of New York. *See id.*; *Diplomatic Man, Inc. v Brown*, No. 05 Civ. 9069 (JSR), 2007 WL 2827125, at *2 (S.D.N.Y. Sept. 28, 2007) (awarding $440 per hour to partners in New York).

The reasonableness of the fee award does not end with the lodstar calculations. *See Grant*, 973 F.2d at 101. When there is partial success, as is the case here,[2] courts may reduce the lodstar calculation to reflect only time spent on successful claims. *Id*. This two step process requires courts to determine (1) "whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which plaintiff succeeded," and (2) "whether there are any unsuccessful claims interrelated with successful claims." *Id.*; *accord Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983). In instances where there exists successful claims that are wholly unrelated to unsuccessful claims, the unsuccessful claims should be excluded from the calculation. *Grant*, 973 F.2d at 101. In instances where both successful claims and unsuccessful claims are interrelated, the "court must determine whether the plaintiff's level of success warrants a reduction in a fee award." *Id*.

Here, all of the claims are part of a common set of facts. Thus, there are no wholly unrelated unsuccessful claims. The unsuccessful claim (claim for damages) is interrelated to the successful claim (claim for injunctive relief) because, although the facts presented only provided speculative evidence of actual monetary damages, the same facts support Integrity's request for

---

[2] In *Farrar*, the Court stated that when a plaintiff is only awarded nominal damages for failing to prove an element for monetary relief, the plaintiff is not entitled to attorney's fees. 506 U.S. at 115. Here, Integrity has only provided speculative evidence to support its requested $100,000 in damages, and it has been recommended that it receive nominal damages. Therefore, for purposes of determining the reasonableness of the counsel's fees, the Court considers Integrity's claim for damages as an unsuccessful claim.

injunctive relief. "A plaintiff who fail[s] to recover damages but obtain[s] injunctive relief, or visa versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified the expenditure of attorney time." *Id.* (quoting *Hensley*, 461 U.S. at 436, n. 11). Such a determination is within the discretion of the district court. *Grant*, 973 F.2d at 101. Based on Integrity's submissions, there is no way to separate the time spent on the unsuccessful claim from the time spent on the successful claim. Moreover, because the facts for both the damages claim and the injunctive relief claim were so interrelated, it would be unreasonable for counsel to separate the time spent on the claims. Some of counsel's work, however, necessitated from the incompleteness of Integrity's original submissions. (*See* Docket Nos. 40, 44.) Therefore, the Court reduces counsel's request of $28,216 in fees and $235 in costs by $8,451. I recommend that Integrity's request for attorney's fees and costs be **GRANTED**, but reduced to total $20,000.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Integrity's request for damages be **GRANTED** in nominal damages of $1, its request for injunctive relief be **GRANTED** in full, and request for attorney's fees and costs be **GRANTED**, but reduced to total $20,000.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.

*See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August 23, 2013**
**New York, New York**

                                                **Respectfully Submitted,**

                                                **The Honorable Ronald L. Ellis**
                                                **United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

<u>Counsel for Plaintiff</u>:
Leslie Haim Ben-Zvi
Leslie H. Ben-Zvi Attorney At Law
100 Wall Street, 23rd Floor
New York, NY 10005